IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL NO. 1:14-CR-00058-MR-DLH

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| JEFFERY SCOTT BLACK, | ) |
| Defendant. | ) |

THIS MATTER is before the Court on Defendant's "Motion to Suppress and Memorandum in Support," Doc. 66, filed on October 11, 2014. The "Government's Response to Defendant's Motion to Suppress Evidence," Doc. 73, was filed on November 5, 2014. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for consideration.

Having fully considered the record and briefs, the undersigned respectfully recommends that Defendant's Motion to Suppress be denied, as discussed below.

### I. FACTUAL BACKGROUND AND FINDINGS

Beginning in February 2014, agents with North Carolina Alcohol Law Enforcement ("NCALE") District IX received information from numerous confidential and reliable sources of information that Dane Bettinazzi ("Bettinazzi"), Sydney Kate Daniels ("Daniels"), Mike Paige ("Paige") and Alexander Zachariah Monroe ("Monroe") were selling heroin in the Buncombe County, North Carolina area. The confidential sources reported that Paige was purchasing heroin in Charlotte and bringing it back to Asheville. The confidential sources also informed

agents that Bettinazzi, Daniels and Monroe were distributing the heroin purchased by Paige. Officers of the Asheville Police Department ("APD") also informed NCALE that they had received information that Paige was travelling to Charlotte several times a week to purchase heroin for distribution in Asheville.

From March 2014 to April 2014, confidential sources made numerous purchases of heroin from Bettinazzi, Daniels and Monroe under the direction and supervision of investigators. On April 16, 2014, a confidential source informed investigators that Paige received a one year prison sentence on a pending state charge. The confidential source told investigators that Monroe was going to start travelling to Charlotte to purchase heroin since Paige was incarcerated. The confidential source informed investigators that Monroe would be travelling to Charlotte on April 16, 2014 to purchase heroin. Investigators followed Monroe and Bettinazzi to Charlotte. They observed Bettinazzi park his Volkswagen Jetta in a parking lot but were unable to observe where Monroe went. After approximately one hour of surveillance, investigators observed Bettinazzi and Monroe depart the parking lot and travel back to Asheville. A confidential source informed investigators that Monroe contacted him/her on his way back from Charlotte and advised that he was returning to Asheville with a supply of heroin.

On April 20, 2014, a confidential source informed investigators that Monroe told him/her that he would be travelling to Charlotte on April 21, 2014 to purchase heroin and transport it back to Asheville. On April 21, 2014, investigators followed Bettinazzi and Monroe from Asheville to Charlotte. Bettinazzi and Monroe travelled to Charlotte in Bettinazzi's Volkswagen Jetta. Investigators observed Bettinazzi and Monroe drive to 3913 Ironwood Street in Charlotte (hereinafter the "residence"). Monroe entered the residence while Bettinazzi waited in the driveway. Approximately thirty minutes later, NCALE agents observed a white male identified

as Jeffery Scott Black a/k/a "Bubba" (the "Defendant") and Monroe exit the residence and enter Bettinazzi's Jetta. The three individuals traveled to a restaurant nearby and parked. Investigators discontinued their surveillance. Investigators learned that Defendant has a prior record for felony possession of a schedule I controlled substance and attempting to traffic in methamphetamine.

On April 23, 2014, a confidential source informed investigators that Monroe would be traveling to Charlotte to purchase heroin. Investigators, now including Special Agents and Task Force Officers from Homeland Security Investigation ("HSI"), followed Monroe and a white male identified as Mitchell Kirman from Asheville to Charlotte. Monroe and Kirman travelled in Kirman's Subaru Impreza WRX. Monroe and Kirman stopped at the Smelly Cat Coffeehouse in Charlotte. They exited the vehicle and met Defendant and an unidentified white female in front of the coffee shop. Defendant and Monroe entered a 2004 Pontiac two door coupe. The registration plate on the Pontiac was expired and belonged on a Mercedes Benz registered to Defendant. Kirman and the unidentified white female remained at the coffee shop.

Investigators followed Defendant and Monroe to the residence. Investigators observed Defendant and Monroe enter the residence. Forty minutes later, Defendant and Monroe returned to the coffee shop. They exited the Pontiac and met with Kirman and the unidentified female for a short time. Kirman and Monroe departed the coffee shop in Kirman's Subaru and traveled back to Asheville. A confidential source informed investigators that Monroe contacted him/her and advised that he went to Charlotte to purchase heroin.

On April 25, 2014, investigators followed Monroe and Kirman from Asheville to Charlotte. They travelled in Kirman's Subaru. Monroe and Kirman stopped at the Smelly Cat

Coffeehouse in Charlotte. Monroe exited the Subaru and entered Defendant's Pontiac. Defendant drove Monroe to the residence. Kirman remained at the coffee shop. Approximately one hour later, Defendant and Monroe returned to the coffee shop. Monroe exited Defendant's Pontiac and entered Kirman's Subaru. Investigators followed Kirman and Monroe back towards Asheville. A confidential source called investigators and informed them that he/she had spoken with Monroe and that Monroe was returning to Asheville with heroin that he had purchased in Charlotte. The North Carolina State Highway Patrol conducted a traffic stop on Kirman's Subaru and seized approximately ninety grams of heroin.

Monroe and Kirman were arrested and transported to the Buncombe County Detention Facility. Monroe told investigators that he had purchased approximately ninety grams of heroin from Defendant at the residence for $2,500.00 dollars an ounce. Monroe told investigators that he knew Defendant as "Bubba." Monroe said Paige introduced him to Defendant prior to being sentenced on April 16, 2014. Monroe told investigators that he had made four trips to Charlotte and purchased heroin from Defendant at the residence each time. Monroe also stated that Bettinazzi and Kirman each drove him twice to purchase the heroin. Kirman admitted driving Monroe to Charlotte to purchase heroin on two occasions. Monroe identified a picture of Defendant as the person he knew as "Bubba."

On May 5, 2014, Task Force Officer David Miller applied for a search warrant for the residence. Miller presented Magistrate Judge Dennis L. Howell with an Application, Affidavit, Attachment A (describing the residence), Attachment B (listing the items to be seized), and a Search and Seizure Warrant for the residence. Judge Howell signed the Search and Seizure Warrant for the residence authorizing agents to search for evidence relating to violations of 21 U.S.C. §§ 841 and 846 (the Controlled Substances Act).

Agents executed the Search Warrant on May 14, 2014. They knocked on the front and back doors of the residence, but no one responded. Agents began to make entry when Defendant answered the front door. When asked if there were any weapons inside, Defendant hesitated and said there might be a pocket knife. When asked if there were any guns inside, Defendant again hesitated and denied there were any guns in the residence.

Agents searching the kitchen of the residence opened a drawer and found a sex toy. The bottom of the sex toy was hollowed out and contained an ounce of black tar heroin. They also found tin foil and an additional quantity of black tar heroin in the freezer. Agents recovered a black bag from the kitchen floor containing a Smith & Wesson .32 caliber revolver, loaded with six rounds of ammunition, loose .40 caliber ammunition, and three magazines for a .40 caliber semi-automatic pistol.

Defendant initially denied dealing heroin. Investigators confronted him about Paige and Monroe and the fact that Monroe had recently been followed to the residence and obtained three ounces of black tar heroin. Defendant admitted that he sold heroin to Monroe on multiple occasions. He explained that he would call a Hispanic source of supply once Monroe arrived and gave him the money. Defendant would then purchase the heroin from the Hispanic source of supply and sell it to Monroe. Defendant admitted to purchasing all the items in the black bag seized from the kitchen floor and stated that he had the revolver for protection.

Agents observed two balloons in Defendant's mouth – consistent with the packaging of user quantities of heroin. When agents told him to spit them out, he swallowed the balloons. He was transported to Presbyterian Hospital by ambulance and received treatment to

flush the heroin from his system. Defendant was eventually cleared from the hospital and taken into custody.

Defendant was subsequently indicted in August 2014 for conspiracy to distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846; possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 924(c)(1)(A); and possession of a firearm by a convicted felon in violation of 18 'U.S.C. § 922(g)(1).

## II. ANALYSIS

The Fourth Amendment provides that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation…." U.S. Const. Amend. IV. The standard of review for a magistrate's determination of probable cause is one of great deference. United States v. Blackwood, 913 F.2d 139, 142 (4th Cir.1990). This already deferential review is further guided by the recognition that the probable cause standard "is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Moreover, "[b]ecause of the fourth amendment's strong preference for searches conducted pursuant to warrants, reviewing courts must resist the temptation to 'invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.'" Blackwood, 913 F.2d at 142 (quoting Gates, 462 U.S. at 236 (internal quotations omitted)). The magistrate reviewing the warrant application is required "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of

knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238.

In addition, "the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir.1993). The nexus between the place to be searched and the items to be seized may be established by normal inferences given all of the circumstances. Id. This nexus may be established, for example, by information or surveillance linking a residence to drug activity, such that it is reasonable to believe that evidence of drug activity will be found at the residence. See id.

Here, Defendant asserts that the warrant was not supported by probable cause because investigators did not sufficiently corroborate Monroe's statements about the source of his heroin. Defendant also argues that Monroe's statements would have only supported the issuance of a search warrant on April 25, 2014, the day of the last drug transaction.

Defendant misconstrues the relevant inquiry. The issue is not whether there was probable cause to support the issuance of a search warrant for evidence of the April 25, 2014 transaction. The Court must determine whether probable cause existed to support the issuance of a search warrant for evidence of the "commission of the crimes of possession, manufacturing, sales and distribution of controlled substances and a conspiracy to commit those offenses." Doc. 73, Affidavit at 3, ¶ 6. The Affidavit states that agents sought to search for "evidence, contraband, the fruits of crime and. . .property designated or intended for use or which is or has been used as a means of committing a criminal offense." Id.

The evidence agents sought was clearly specified in "Attachment B" to the Affidavit. For example, they sought to search for and seize "[c]ontrolled substances"; "[p]ackaging material"; "[c]urrency"; "[r]ecords. . .reflecting the purchase or sale of controlled substances" such as "customer lists" and "supplier lists"; "other papers noting the price, quantity or quality of controlled substances" or "indicating amounts due or owed"; "[f]inancial records reflecting... assets acquired through the. . .trafficking. . .of controlled substances"; "ledger sheets reflecting or accounting for monies and/or controlled substances received, disbursed or exchanged"; and "[i]ndicia of occupancy, residency, or ownership" of the residence. Doc. 73, Affidavit, Attachment B.

The facts presented in the Affidavit included the following: (1) Monroe travelled to Charlotte to purchase heroin while Paige was incarcerated; (2) there were four such trips; (3) investigators observed Monroe meet with Defendant during three of those trips; (4) they observed Monroe and Defendant enter and exit the residence together; (5) Kirman admitted to driving Monroe to Charlotte on two occasions to meet with Defendant to purchase heroin; (6) Monroe admitted making four trips to Charlotte to purchase heroin from Defendant at the residence – including the heroin seized by investigators on April 25, 2014.

Given those facts, Judge Howell properly found probable cause that the residence would contain evidence of the crimes of possession, manufacturing, sales and distribution of controlled substances and conspiracy to commit those offenses. The facts contained in the Search Warrant Affidavit "suffice[d] for the practical, common-sense judgment called for in making a probable cause determination" by Judge Howell here. Gates, 462 U.S. at 244. The Motion to Suppress should be denied.

## III. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that Defendant's "Motion to Suppress and Memorandum in Support," Doc. 66, be DENIED.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Martin Reidinger.

**SO RECOMMENDED**.

Signed: November 19, 2014

David S. Cayer
United States Magistrate Judge